UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| H. MICHAEL KIMBALL, WILLIS W. WHITE, DAVID BEARDMORE, THOMAS BALDRIDGE, ORLAND BADLEY, CLAYTON BADLEY and JERRY BADLEY,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 1:12-CV-00108-EJL<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court in the above-entitled matter is the United States' Motion for Summary Judgment (Dkt. 41), Motion to Strike Plaintiffs' Reply Brief (Dkt. 51) and Motion for Trial Setting (Dkt. 35). Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument.

**MEMORANDUM DECISION AND ORDER - 1**

# PROCEDURAL BACKGROUND

Plaintiffs H. Michael Kimball, Willis W. White, David Beardmore, Thomas Baldridge, Orland Badley, Clayton Badley and Jerry Badley filed this lawsuit alleging negligence in the management of the Raines Fire in 2007 in the Payette National Forest. The fire destroyed certain properties owned by Plaintiffs. Plaintiffs alleged four discrete acts of negligence by the United States Forest Service ("Forest Service"): 1) the Forest Service negligently informed landowners to stay away from their homes; 2) the Forest Service failed to track human resources properly and did not plan for one crew to "time out"[1]; 3) the pumps and hoses the Forest Service used on the fire were not set up properly; and 4) the backfire set by the Forest Service on July 20, 2007 was negligent.

The Court previously determined as a matter of law that two of the negligence claims (failure to adequately staff the fire and setting of a backfire) were subject to the discretionary function exception and were dismissed. Memorandum Decision and Order, Dkt. 31. The Court determined there were genuine issues of material fact regarding the other two negligence claims (negligently informing landowners to stay away from their property and that the pumps and hoses were not properly set up) and these two claims would be allowed to proceed. *Id.*

---

[1]Because firefighting crews work long days without break, the Forest Service has a policy that requires fire crews to take a break at certain intervals and this break is referred to as "timing out." The Incident Commander is charged with tracking the "timing out" of crews in managing the resources available to fight a fire.

**MEMORANDUM DECISION AND ORDER - 2**

After the Court's ruling, the parties entered settlement negotiations and the claims of Plaintiffs Kimball, White, Beardmore and Baldridge were resolved. Stipulation of Dismissal, Dkt. 43. Plaintiffs' counsel moved to withdraw from representation of Clayton Badley, Jerry Badley and Orland Badley. Dkt. 36. This motion was granted by the Court. Dkt. 37. The Badleys each filed notices they intended to proceed as pro se litigants. Dkts. 38-40.

The United States filed a motion for summary judgment regarding the claims of the Badleys. The Badleys filed a response. The United States filed a reply. Then without leave of the Court, the Badleys filed a reply brief, Dkt. 50. The United States then moved to strike Orland Badley's reply brief. Dkt. 51.

## FACTUAL BACKGROUND

It is undisputed the Raines Fire started on or about July 7, 2007 and was not the only forest fire being managed by the Forest Service in July of 2007. The Incident Command Team was managing three fires in the area. The Raines Fire was started by a lightening strike and began burning in a designated wilderness area. Early on, the Forest Service decided to suppress the fire, rather than manage it as a wildland fire, due to the potential for the fire to burn to the Salmon River and pose a threat to private properties. On July 17, 2007, two division supervisors were assigned to the Raines Fire: Mike Story and Craig Campbell. The Incident Command Team decided two hot shot crews would be assigned to the fire on July 17th. The Logan Hot Shots arrived on July 17th and the Lewis and Clark Hot Shots arrived at the Raines Fire on July 18th. These crews were

**MEMORANDUM DECISION AND ORDER - 3**

instructed to construct fire lines and set up pumps and hoses for the purpose of structure protection.

It is undisputed that the Raines Fire grew in strength daily and was moving closer to the privately owned structures at the Badley Ranch, Copenhaver subdivision and Mackay Bar. Clayton Badley's property was located at the Mackay Bar Bridge and some personal property was stored at Jerry Badley's property. Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss or for Summary Judgment, Dkt. 48, p.5. Jerry Badley's property is referred to as the Old or Lower Badley Ranch. *Id.* Orland Badley's property is located on the Copenhaver Subdivision and consists of Lot #23 of approximately 10 acres and the common area which consists of approximately 60 acres. *Id.*

In the United States Motion to Dismiss, the Badley property was described in slightly different detail: Plaintiffs' Orland, Clayton, and Jerry Badley jointly owned the Badley Ranch, also called the Lower Badley Ranch or Old Badley Ranch in 1970 and then in 1985, their interests were divided by agreement. (Dkt. 13-10, Ex. G, Orland Badley's Answers to Interrogatories, p. 2-3.) The assessed value of Jerry Badley's property in 2007 was $41,516, and in 2012 the assessed value was $31,746. (Dkt. 13-13, Ex. J, Jerry Badley's Response, Raines 0117, 0122.) Jerry Badley filed a tort claim with the Forest Service for $1,994,975, for his fire loss. (Dkt. 13-9, Ex. F, Initial Disclosures, Raines (JR)-0002.)

Orland Badley claims his share of the Badley Ranch was used to create the Copenhaver Subdivision and that in 1986 he built a residence, outbuildings, an outhouse and carport on the property. (Dkt. 13-10, Ex. G, Orland Badley's Answers to Interrogatories, p. 2-3.) In 2007, the assessed value of Orland Badley's property was $121,689. (Dkt. 13-11, Ex. H, Orland Badley's Response, Raines 0133-0134.) In 2012, the assessed value was $86,154. (*Id.*, Raines 0129.) In his tort claim Orland Badley asked for $883,500.

The assessed value of Clayton Badley's property in 2007 was $7,653, and it was $9,741 in 2012. (Dkt. 13- 12, Ex. I, Clayton Badley's Response, Raines 0123 and 0128.) In his tort claim he asked for $142,720.

Luke Badley is the nephew of the Badley Plaintiffs. (Dkt. 13-15, Ex. L, Luke Badley Depo., 8.) He has lived for 30 years on the Upper Badley Ranch (owned by his father, Jack Badley). (*Id.* at 17.) He recalls that about every ten years there was a wildfire in that canyon. (*Id.*) Luke Badley was also disclosed by Plaintiffs as a potential expert witness in this case. (Dkt. 49-2.) Plaintiffs now claim Luke Badley's testimony is not reliable as he has an adverse possession action against his uncles. Luke Badley admitted to this state court action but Plaintiffs fail to provide any evidence that the statements regarding his seeing and talking with Jerry Badley at the Old Badley Ranch or the state of the structures are unreliable or contested. The condition of the structures at the Old Badley Ranch were corroborated by the Forest Service Hot Shots fighting the fire.

**MEMORANDUM DECISION AND ORDER - 5**

Therefore, the Court will consider the sworn testimony of Luke Badley in resolving the motion for summary judgment.

Jerry Badley was at the Old Badley Ranch when the Raines fire was burning as well as a week prior to the fire starting. (Ex. L, Luke Badley Depo., 52, 74.) He and Luke watched the fire being fought in the distance, and Jerry told Luke he was leaving. (*Id.* at 52-53.) Jerry Badley does not provide any testimony that he talked with Forest Service personnel about the fire or that he was told by Forest Service personnel to stay away from his property.

It is undisputed that Clayton Badley was staying with Jerry Badley at the Old Badley Ranch when the fire broke out and he left with Jerry. (Dkt. 41-3, Ex. A, Clayton Badley Depo., 15-16.). Clayton Badley also testified he did not talk with anyone from the Forest Service even though he knew there was a fire. *(Id.)* There is no evidence in the record Clayton Badley was told by any person from the Forest Service to stay away from his property.

The structures on Jerry Badleys' property (the Lower or Old Badley Ranch) were uninhabitable, with mouse and rat feces in the walls and roof, essentially condemned. (Dkt. 13-15, Ex. L, Luke Badley Depo., at 52-53.) There was no irrigation around the houses at the "old ranch." (*Id.* at 79.) Jerry Badley had done no irrigation or fire protection around his property, and had no hoses. (*Id.* at 60).

**MEMORANDUM DECISION AND ORDER - 6**

Orland Badley testified in his deposition that he did not even know there was a fire near his property at Copenhaver until his house was already burned and he went to the property two days after the fire had burned the property. (Third Declaration of Joanne P. Rodriquez, Dkt. 41-6, Ex. A, Dkt. 41-2, Orland Badley Depo, 33.) Orland Badley also testified he heard about the fire from Jerry Robinson, not Forest Service Personnel, but that he met with the Acting Ranger after the fire. (*Id.* at 34-35.) Prior to the fire, Orland Badley had not been to his property since the fall of 2006. *(Id.* at 33.)

In the response brief Orland Badley indicates in reviewing discovery he found a Forest Service handwritten note that on July 20, 2007 at "1100 Oland [sic] Badly [sic]- out of town land owner called up Dale [or Dave] on fire status." Dkt. 48-1, p.3, Bates D001540. There is another indication of the 1100 call on p. 4 of Dkt. 48-1, but the Court cannot tell where the typed notes come from although the notes appear to reference Bates numbers from discovery materials:

> 07/20/2007: Raines = 2500 acres. (D000017)
> . . .
> 1100: Orland Badley called for update on fire, status. Pass on to Ron Naber. (D000281).

Orland Badley now claims the dispatch logs refreshed his memory and he remembers he did talk with someone from the Forest Service and he presumes it was Ron Naber. Orland claims he asked him [the unknown Forest Service employee] if it would be helpful if I [Orland] came in to assist. "I do now remember he told me that it would not be necessary, that they had men and equipment on the Copenhaver and the Old Badley Place for

structural protection." Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss or For Summary Judgment, Dkt. 48, p.3.[2]

As to the claim of negligence regarding pumps at the Old Badley Ranch, the Court notes the following undisputed facts. The Lewis and Clark Hot Shot crew had "timed out" and left their assignment at the Raines Fire at approximately 11:00 a.m on the morning of July 20, 2007. Prior to leaving, the Lewis and Clark hot shots had set up pumps and hoses around some of the structures at the Old Badley Ranch.

Potential high winds were expected on July 20th. Firefighters were briefed that it was a "red flag" day which means they were expected to experience a need for lot of fire fighting. In the afternoon around 1:30 or 2:00 p.m., the inversion lifted and high winds occurred causing the main Raines Fire to enlarge in size and speed. Some of the Logan Hot Shots left camp at 12:30 p.m. intending to prepare for a burnout operation later that day or evening. Affidavit of John Kluskdal, Dkt. 18, Exhibit O, Michael Hanson Raines Fire log on July 20, 2007, Dkt. 18-15. At 1:30 p.m., Mike Hanson of the Logan Hot Shots was still at camp and heard trees starting to torch and the wind was causing spot fires to jump the existing fire line. *Id.* Hanson thought the burnout operation had begun. Hanson left for the Old Badley Ranch and when he arrive "The area had been plumbed and the sprinklers were running. There was no fire in this area at this time." *Id.*

---

[2]The Court notes this statement is merely argument in the brief as the statement was not filed in an affidavit and sworn under oath. See Fed. R. Civ. P. 56(c)(1)(A).

**MEMORANDUM DECISION AND ORDER - 8**

Kendall Wilson, also of the Logan Hot Shots, was located at the Old Badley Ranch. He had been told earlier in the day by Campbell that if the conditions permitted, they could start the burnout before the relative humidity dropped as the Old Badley Ranch was prepped. Wilson testified in his deposition the Logan Hot Shots did not see the pumps and hoses set up at Badley Ranch until the afternoon of the fire and found they were not initially operational, but Wilson's crew were able to repair the pumps and hoses and get them up and running. Third Declaration of Joanne Rodriguez, Dkt. 41-6 , Ex. D, Wilson Depo., Dkt. 41-5, 57. Wilson also testified that the Old Badley structures were "unkempt, a lot of fuel built up around it, undefendable, in industry terms." *Id.* at 39. Wilson also acknowledged the unexploded ordinance stored in the structures. *Id.* at 38. This is also confirmed by Hanson's notes on fire that indicate an explosion and ammunition exploding in structures. Affidavit of John Kluksdal, Dkt. 18, Exhibit O, Michael Hanson Raines Fire log on July 20, 2007, Dkt. 18-15. Finally, Wilson testified it would not have mattered if there were more human resources at the Old Badley Ranch because when the fire came, the structure in the meadow would not have survived with the fuel that was in it along with the missing roof and the tall grass growing inside the structure. Third Declaration of Joanne Rodriguez, Dkt. 41-6 , Ex. D, Wilson Depo., Dkt. 41-5, 36-37. Wilson acknowledged the intentional firing of the line to stop the oncoming fire was unsuccessful. *Id.* at 36.

In reviewing the deposition of Chuck Swain attached as Ex. P, Dkt. 18-16, to the Affidavit of John Kluksdal, Dkt. 18, the evidence appears undisputed that the Forest Service represented to some Copenhaver landowners (although there is no evidence in the record that Orland Badley was informed) that there were pumps watering down Copenhaver. When Swain when to check on his property there were no pumps set up at Copenhaver. Swain informed Jerry Robinson and possibly Forest Service personnel their information regarding pumps at Copenhaver was incorrect. (*Id.*) Later a helicopter dropped two Mark 5 pumps and hoses to be used at Copenhaver. (*Id.* 24-27. ) The residents of Copenhaver did not set up the Forest Service equipment but did set up privately owned sprinklers. The helicopter delivered pumps were not set up until the following day when a couple Forest Service firefighters arrived at Copenhaver.

Swain testified that road access was restricted so you did not know if you left if you would be able to get back in. *(Id.* at 27.) He said you could see the fire in the distance and it would die down at night but that the fire was not going away. He testified he would get up in the morning and make everything wet and then at noon start the pumps again and then in the evening make sure an abundance of water was being put down. (*Id.* at 29.)

The testimony of Swain supports that pumps and hoses were set up at Copenhaver they worked until the fire caused the pumps to break down and/or the hoses to burn through. "The sprinklers looked like they were working there fine from what the Forest Service put in place. Everything looked okay." (*Id.* at 39.) In the midst of the fire. The

**MEMORANDUM DECISION AND ORDER - 10**

Forest Service pumps shut down. Some of the other private landowners had sprinklers going that protected some of the structures. Swain integrated his pump into the Forest Service line, but in the midst of the pumps shutting down, the fire melted through the hoses. *(Id.* at 40.) A Forest Service sprinkler line did wet the runway and stop the fire that had started on the runway. *(Id.* at 41-42.) Forest Service and landowner hoses were melting so hoses were folded over and duct taped to get the water pressure back near Orland's. *(Id.* at 43.) The firefighters continued to battle the fire relying on the pumps of the landowners and their manual firefighting skills. "[Y]ou could not believe that much acreage in that short amount of time could happen [burn]." *(Id.* at 45.)

Once the high winds arrived on July 20th, the Raines Fire became very intense very quickly. The record does not reflect that a "backburn" was set by the firefighters as it is undisputed that the weather and fire conditions were not conducive to a backburn being set. Backburns had been done at night previously on this fire when the weather conditions were calm and the fire was weaker.

The firefighters' testimony and notes are consistent when they indicate the main fire was in the trees which led to crown fires which led to sparks flying in the wind which led to spot fires that eventually jumped the established fire line. While a spot fire could have turned into a backburn fire unintentionally, the record also reflects the firefighters at Old Badley Ranch "fired the line" which was an emergency backfire to attempt to slow down the main fire coming their direction and create black (burned) space between the main fire and the line for a safety zone for the firefighters by reducing the fuel between

**MEMORANDUM DECISION AND ORDER - 11**

the firefighters and the main fire. The testimony of firefighters at Badley Ranch is that the intentional "firing of the line" was unsuccessful as the main fire had become too powerful from the strong winds. The "firing of the line" did not slow down the main fire.

The fire at the Old Badley Ranch was exacerbated by certain explosive materials stored in certain outbuildings. Once those items caught fire, the safety of the firefighters was priority one and it was no longer safe to try to save other structures. It is undisputed that outbuildings at the Old Badley Ranch were surrounded by vegetation that would serve as fuel for the fast approaching fire and no steps had been taken by the landowner to reduce the fuel around the structures.

In part due to the firefighters working with Luke Badley, the majority of the Upper Badley Ranch structures survived the fire. The firefighters at Copenhaver worked with Swain to save as many structures as possible, but once certain pumps failed and spot fires started, certain structures were lost at the Copenhaver subdivision including the structures of Orland Badley. The firefighters were successful in protecting the main structures at Mackay Bar.

The United States claims based on the dismissal of certain plaintiffs, the Badleys remaining claims cannot not survive and summary judgment should be granted. The Badleys argue genuine issues of fact remain to prevent summary judgment.

# STANDARD OF REVIEW ON MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327.

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). Material facts are those that may affect the outcome of the case. *See id*. at 248.

The moving party is entitled to summary judgment if that party shows that each issue of material fact is not or cannot be disputed. To show the material facts are not in dispute, a party may cite to particular parts of materials in the record, or show that the materials cited do not establish the presence of a genuine dispute, or that the adverse party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A)&(B); *see T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex*, 477 U.S. at 322). The Court must consider "the

**MEMORANDUM DECISION AND ORDER - 13**

cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3).

Material used to support or dispute a fact must be "presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Affidavits or declarations submitted in support of or opposition to a motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the non-moving party. All inferences which can be drawn from the evidence must be drawn in a light most favorable to the nonmoving party. *T.W. Elec. Serv.*, 809 F.2d at 630-31 (internal citation omitted).

Rule 56(e)(3) authorizes the Court to grant summary judgment for the moving party "if the motion and supporting materials–including the facts considered undisputed–show that the movant is entitled to it." The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby*, 477 U.S. at 252.

## ANALYSIS

**1. Motion to Strike Badleys Reply Brief**

The Government seeks to strike the unauthorized reply brief filed by the Badleys (Dkt. 51). Reply briefs by the non-moving party are not allowed under the Local Rules.

**MEMORANDUM DECISION AND ORDER - 14**

Dist. Idaho Loc. Civ. R. 7.1. To begin with, pro se litigants are held to same procedural rules as counseled litigants. *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987). Plaintiffs filed no response to the motion to strike. By failing to respond to the motion to strike, the Court is free to deem the non-response as consent to the granting of the motion. Dist. Idaho Loc. Civ. R. 7.1(e). Moreover, in order to file a surreply, Plaintiffs needed to file a motion for leave of the Court to do so and show why a surreply was necessary in this case. This was not done. In reviewing the reply brief filed by Plaintiffs, the Court finds it should not be considered by the Court as no showing was made why the arguments included in the brief could not have been included in their response brief. Additionally, Plaintiffs attached the deposition of Mr. Swain and that is already part of the record so it was unnecessary to submit that deposition as an exhibit to the surreply. Finally, the Court finds the Plaintiffs' reply brief adds nothing to the analysis required for the Court to rule upon the motion for summary judgment. For these reasons, the Government's motion to strike shall be granted and the reply brief shall not be considered by the Court.

**2. Motion for Summary Judgment on Claim Forest Service Negligently Informed Badleys to Stay Away from Property**

Government argues that statements under oath indicate Plaintiffs have no evidence they talked with Forest Service personnel and were told to stay away. Plaintiffs do not contest undisputed evidence Jerry Badley and Clayton Badley were aware of the fire when they were at the Old Badley Ranch and never contacted the Forest Service.

**MEMORANDUM DECISION AND ORDER - 15**

Therefore, their claims regarding any negligence regarding communications must be dismissed.

As to Orland Badley, the Court finds there is "some" evidence in the Forest Service's records that Orland Badley called the Forest Service at 11:00 a.m. on July 20th which was before the fire burned his Copenhaver property. The Court notes this "new" recollection is in conflict with his deposition testimony and lacks some trustworthiness in that he does not know who he spoke to, but it does appear to be corroborated by the Forest Service's own records that a call was at least received by the Forest Service the morning of July 20th. Whether a person from the Forest Service returned the call is disputed and what if anything was told to Orland Badley is also disputed.

It is undisputed that the Forest Service gave landowners and other locals daily briefings regarding the Raines Fire and one homeowner was given a radio to track fire fighting efforts. The firefighters assigned to the Raines Fire were aware of the existence of the private properties and that one of the objectives of the Forest Service was to protect the private properties. It is undisputed that certain Forest Service personnel informed some of the Copenhaver homeowners that he did not believe the private properties were in danger before the high winds kicked up on the afternoon of July 20th. It is disputed whether the landowners were told they could not go to their property, it was not recommended they go to their properties, or that there was an aviation restriction that prevented certain landowners from flying into their properties.

Forest Service Fire Information Officer Mike Koehnke remembers speaking with Dr. Howard about the flight restrictions set by the Federal Aviation Administration, but does not remember telling Dr. Howard or any other homeowner they could not or should not go to Copenhaver. Jay Winfield testified that the Forest Service cannot force people to leave their property and that evacuations are handled county officials or the local sheriff's office. Dr. Howard remembered being told he should not go to his property in Copenhaver.

Whether or not Orland Badley was told not to go to his property is disputed and this material fact prevents the Court from granting summary judgment in favor of the United States. It is a material fact to the claim of negligence on the part of the Forest Service and whether the Forest Service instructed Orland Badley to not go to his property, whether there were road or aviation restrictions in place that would have prevented Orland Badley from getting to the Coperhaven property on July 20th, whether Orland Badley being at the property would have resulted in a different outcome – could he have stopped the burning of his structures even if he was at the property. The Court finds Orland Badley's claim of negligence regarding Forest Service communications survives summary judgment and it will be Orland Badley's burden of proof at trial to prove the Forest Service was actually negligent in its communications and such negligence was the proximate cause of any damage that occurred at his property located at Coperhaven.

**MEMORANDUM DECISION AND ORDER - 17**

**3. Motion for Summary Judgment on Claim Pumps and Hoses Were Not Properly Set Up.**

It is undisputed that one of the fire fighting objectives for the Raines Fire was to preserve private property. Plaintiffs argue once the Forest Service determined it would protect structures on private property, it breached its duty to properly set up and maintain the pumps and hoses at the structures. The Court has examined the claims as to the Badleys and finds the facts are undisputed facts that pumps and hoses were set up at both the Old Badley Ranch and at Coperhaven Subdivision by the Forest Service. This is confirmed by the uncontested testimony of Luke Badley, Kendal Wilson, Michael Hanson and Clinton Swain. The Badleys have provided no admissible evidence that the pumps and hoses stopped working due to negligence on the part of Forest Service fire fighters. Instead, the evidence in the record is undisputed that prior to the fire growing to an uncontrollable strength the afternoon of July 20th, the pumps and hoses were working at all the Badleys' properties. After the fire became unmanageable, the hoses and pumps were damaged by the fire and stopped working (as did other privately owned hoses and pumps at Coperhaven). This is not evidence of negligence on the part of the Forest Service. It is simply the evidence of the power of a uncontrolled forest fire.

For these reasons, the Court finds the United States is entitled to summary judgment on its claims regarding negligence in setting up pumps and hoses at the Old Badley Ranch, Coperhaven and the property located near the Mackay Bar. The testimony of Clinton Swain simply does not establish negligence on the part of the Forest Service at

the time the fire hit the afternoon of July 20th. It is true the Forest Service had given out misinformation that pumps were up and running before they actually were running at Coperhaven, but prior to the fire hitting Coperhaven on July 20th, the evidence is clear the Forest Service and private landowners had set up pumps and were watering down the property.

The evidence is also undisputed pumps and hoses were set up and running at the Old Badley Ranch, but the fire was too strong to be contained and the fire damaged the hoses and pumps. The property damage sustained was directly impacted by the condition and explosive contents of the structures and the lack of any fire protection steps completed by Jerry and Clayton Badley when they saw the fire and were at the Old Badley Ranch. As a matter of law, the actions of the Forest Service at the Old Badley Ranch does not equate to negligence on the part of the Forest Service and Plaintiffs have provided no evidence to the contrary to defeat the motion for summary judgment.

As to Clayton Badley's property at Mackay Bar, the evidence is uncontested the firefighters protected the structures from damage at this location.

Therefore, summary judgment in favor of the United States should be granted on the negligence claims of each of the Badleys related to the alleged negligence in setting up pumps and hoses. There are no genuine issues of material fact regarding the placement and functioning of the pumps and hoses prior to the fire and the evidence is undisputed that the fire became uncontrollable due to weather conditions the afternoon of July 20, 2007 and the fire caused the pumps and hoses to fail. There is simply no evidence of

**MEMORANDUM DECISION AND ORDER - 19**

negligence on the part of the Forest Service in setting up the sprinkler lines prior to the fire.

## ORDER

**IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment (Dkt. 41) is **GRANTED IN PART AND DENIED IN PART.** The only claim that survives summary judgment is Orland Badley's claim of negligence regarding whether or not the Forest Service told him to stay away from his Coperhaven property. All other claims are dismissed as a matter of law based on the undisputed facts presented in the record.

2. Defendant's Motion to Strike (Dkt. 51) is **GRANTED**.

3. Defendant's Motion for a Trial Setting (Dkt. 35) is **GRANTED** and Orland Badley is directed to confer with counsel for the United States and submit a jointly agreed trial date based on witness availability.

DATED: **March 2, 2015**

Honorable Edward J. Lodge
U. S. District Judge